STATE of Oklahoma, ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

William P. WILLIS, Jr., Respondent.

SCBD No. 3848.

Supreme Court of Oklahoma.

Oct. 26, 1993.

Dan Murdock, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Stephen G. Fabian, Jr., Fabian & Associates, Edmond, for respondent.

HARGRAVE, Justice.

We entered an order of interim suspension pursuant to Rule 7.3 Rules Governing Disciplinary Proceedings, 5 O.S.1991 Ch. 1, App. 1A, on September 28, 1992, following receipt of the information, judgment and sentence reflecting Respondent's conviction on June 5, 1992, of the crime of obtaining a Schedule II controlled substance by misrepresentation, in violation of 21 U.S.C. § 843(a)(3) and 18 U.S.C. § 2. Respondent pled guilty and was sentenced to probation for a term of three (3) years.

As a condition of his sentence, Respondent was ordered to comply with the special condition that he participate in a program approved by the U.S. Probation office for the treatment of narcotic addiction, drug dependency or alcohol dependency, which would include testing to determine if Respondent has reverted to the use of drugs or alcohol. The sentence further mandated that Respondent shall reside in and participate in a program of residential drug/alcohol treatment facility as instructed by the probation/parole officer, until discharged by the facility director.

By order of December 7, 1992 we directed that the matter be referred to the Professional Responsibility Tribunal for a hearing under Rule 7.4, R.G.D.P. and that the interim suspension remain in effect until further order. The hearing before the trial panel was held February 10, 1993 and the report of the trial panel was filed March 22, 1993. The trial panel, after having considered matters in mitigation, including Respondent's rehabilitation, recommended suspension from the practice of law until June 5, 1995, which would be three years from the date of his conviction, with all but the first six months suspended, the six months to be calculated from the date of the interim suspension.

Rule 7, Rules Governing Disciplinary Proceedings, sets out the procedure for summary disciplinary proceedings before the Supreme Court. Rule 7.1 provides that a lawyer who has been convicted in any jurisdiction of a crime that demonstrates such lawyer's unfitness to practice of law, regardless of whether the conviction resulted from a plea of guilty, or nolo contendere or from a verdict after trial, shall be subject to discipline as set out therein. Rule 7.2 provides for transmission to the Supreme Court of the documents concerning the conviction and states that such documents shall constitute the charge and be conclusive evidence of the commission of the crime and shall suffice as the basis for discipline in accordance with the rules. Rule 7.4 provides that if the conviction becomes final without appeal, the Court shall order the lawyer to show cause why a final order of discipline should not be made, and the lawyer may in the interest of explaining his conduct or by way of mitigating the discipline to be imposed upon him, submit a brief and any evidence tending to mitigate the severity of the discipline.

Respondent testified that in 1982 he was prescribed the pain-killer Demerol as part of his treatment for perirectal abscess and that about the same time he developed ulcers, and after stopping with Demerol, started taking Percocet, a different kind of pain medication. During that period he suffered some personal financial problems and family illness and testified that he became addicted to the pain-killers. Three witnesses testified for Respondent at the hearing and three witness testified through video deposition. These witnesses included the associate district judge and district attorney from Cherokee county and the city attorney for Tahlequah. Respondent's witnesses testified as to his excellent abilities in the practice of law and his high moral character and stated that they were surprised to learn of the conviction. All stated that they had seen no evidence of his drug addiction in Respondent's practice of law, nor any evidence of its affecting his work. Without overgeneralizing, most witnesses drew a distinction, as to Respondent's fitness to practice law, between actions of fraud or misrepresentation that harmed clients or third parties and Respondent's actions, which they believed harmed only Respondent himself.

Respondent contends that because he has been rehabilitated and because his conviction does not, according to him, constitute

unfitness to practice law, he should not be suspended from the practice of law. He states that he was addicted to the drugs and consumed them himself. He denies that any fraud was involved and stated that he would use the term "subterfuge" rather than fraud, because fraud would involve some third person or embezzling money from trust funds or something similar. Respondent testified that he never let his consumption of drugs interfere with his practice of law and the witnesses called on Respondent's behalf supported that.

Regardless of Respondent's characterization of his actions, he pled guilty to and was convicted of a felony charge of obtaining controlled drugs by misrepresentation and the conviction stands as conclusive evidence of the commission of that crime. Rule 7.2, R.G.D.P. On cross-examination the general counsel questioned Respondent about the circumstances surrounding his obtaining of the prescriptions:

"Q: How many different pharmacists did you get the drugs from?

A: 30, 50, I don't know."

After later:

"Q: Would you agree then that during this period of time, that five-year period, you would get a hundred prescriptions a year?

A: I would just have to guess.

Q: All from the same doctor?

A: There were times when I would go to the hospital but I would have to jimmy up some medical problems."

In his brief to this Court Respondent contends that he has presented sufficient evidence in mitigation, including: his rehabilitation, his effective representation of clients, that his dependency never caused harm to any client, that he was honest, truthful and reliable, his brilliance in a limited field and that his conviction did not affect his ability to practice law, to justify the Trial Panel's recommendation. In his second proposition, he argues that conviction of obtaining a Schedule II narcotic by misrepresentation does not *per se* demonstrate his unfitness to practice law. Respondent relies heavily on *State ex rel.*

*Oklahoma Bar Association v. Armstrong,* 791 P.2d 815 (Okla.1990), wherein we stated that the scope of the inquiry include the particular lawyer's unfitness to practice law and not merely the type of crime of which the lawyer stands convicted.

Respondent contends that his conviction for substance abuse is similar in scope to alcoholism. Respondent states that he does not wish to diminish the significance of his "reprehensible behavior" and recognizes this Court's role in disciplinary proceedings in protecting the public and purification of the bar. He states that this court has long recognized that in certain cases the conviction is punishment enough. Respondent recognizes this Court's duty to protect the public, but does not feel that the public needs protection from him because his acts occurred over three years ago and he has been rehabilitated for over two years and had been competently practicing law until the time of his suspension.

The Bar argues that Respondent's conviction warrants suspension in excess of that recommended by the trial panel. The Bar cites *State ex rel. Oklahoma Bar Association v. Ingmire,* 56 O.B.J. 2082 (1985) where an attorney who was convicted of a misdemeanor for simple possession of cocaine was suspended for three years. We there found that the conviction rendered the respondent unfit to practice law within the meaning of Rule 7.1, Rules Governing Disciplinary Proceedings. The Bar notes that *Ingmire* did not involve a felony and that Respondent's conviction involved the additional elements of misrepresentation and fraud in obtaining the controlled substance from pharmacists.

The Trial Panel found that this case is distinguishable from *Armstrong, supra,* in that the felony offense of obtaining a Schedule II controlled substance by misrepresentation does demonstrate a lawyer's unfitness to practice law, per se, because of the deception and dishonesty inherent in the offense, and that the Respondent is subject to discipline.

Respondent's assertions that he was addicted to the drugs involved and that he

has been successfully rehabilitated appear to be offered as an excuse that he should not be suspended. As noted above, Respondent likens his situation to that of an alcoholic. Clearly we have the utmost compassion for those members of the legal profession who have been addicted to alcohol or drugs and who have successfully undergone rehabilitation. However, Respondent was not convicted of nor suspended because of addiction to drugs. Respondent was convicted of a felony involving obtaining a controlled substance by misrepresentation. Respondent's interim suspension was based on our finding that, as such, the conviction appeared to demonstrate Respondent's unfitness to practice law. Respondent prefers to characterize his actions as "subterfuge" rather than as misrepresentation or fraud. The issue is one of the truthfulness of an officer of the court and his perpetration of acts that indicate deception for personal gain in the form of prescription drugs.

 Respondent seems to feel that because his conviction did not involve the *practice* of law, he is not unfit to practice law. Respondent's witnesses presented evidence that Respondent is very capable in the practice of law and that his addiction did not interfere with his law practice or his clients' wellbeing. However, "fitness to practice law" entails more than the ability to handle cases; it involves good moral character and respect for the law. The first qualification for the license of attorney-at-law is that such person be of good moral character, and particularly as respects the responsibilities and duties of an attorney; this requirement of good moral character is a continuing qualification. *Appeal of Evinger*, 629 P.2d 363 (Okla.1981). *State ex rel. Oklahoma Bar Association v. Booth*, 441 P.2d 405 (Okla.1966).

Further, Rule 8.4(c), Rules of Professional Conduct, provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation. Rule 8.4(b) provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness *or* fitness as a lawyer in other respects. In *State ex rel. Oklahoma Bar Association v. Arnett*, 815 P.2d 170 (Okla.1991), the respondent entered a plea of guilty to the charge of possession of a controlled and dangerous substance (cocaine) which did not involve conduct in an attorney-client relationship or in the performance or non-performance of any obligation while acting on behalf of any client. The parties had stipulated that several witnesses would testify that the respondent was fit to practice law. We stated that Arnett's conduct violated the provisions of Rule 8.4(b) of the Rules of Professional Conduct in that he committed a criminal act that reflected adversely on his fitness to practice law. We imposed a ninety day suspension and a two-year probationary period in that case, which did not involve elements of fraud or misrepresentation.

The Bar argues that we should consider evidence of other criminal acts (instances in which Respondent obtained drugs by unauthorized prescriptions other than the two incidents for which he was convicted) in determining discipline. We have noted above the testimony of Respondent which elicited this information and we appreciate the Respondent's forthrightness with the tribunal. We have, however, based our order of discipline solely on the conviction; we have not considered other acts for which the Respondent was not charged. The Trial Panel noted that they had not considered any uncharged misconduct in their recommendation to this Court.

 After *de novo* review of the record, the COURT FINDS AND HOLDS THAT:

1. The Respondent having pled guilty to and been convicted of the crime of obtaining a Schedule II controlled substance by misrepresentation, which conviction demonstrates Respondent's unfitness to practice law under Rule 7, R.G.D.P., and the Respondent being currently under interim suspension under Rule 7.3, Respondent is hereby suspended from the practice of law for a period of fifteen (15) months, commencing September 28, 1992, until December 28, 1993.

2. Respondent is ordered to pay the costs of this proceeding in the amount of $891.06 within thirty (30) days from the date of this Court's decision.

**RESPONDENT IS ORDERED SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF FIFTEEN (15) MONTHS COMMENCING SEPTEMBER 28, 1992, THE DATE OF THE INTERIM SUSPENSION ORDER, UNTIL DECEMBER 28, 1993. RESPONDENT IS ORDERED TO PAY THE COSTS OF THIS ACTION WITHIN THIRTY (30) DAYS OF THE DATE OF THIS COURT'S DECISION.**

HODGES, C.J., and ALMA WILSON, KAUGER and WATT, JJ., concur.

SIMMS, Justice, dissenting.

I would order the suspension to commence on the date this opinion becomes final.

LAVENDER, V.C.J., and OPALA and SUMMERS, JJ., disqualified.