2013 OK 40

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Jon Edward BROWN, Respondent.**

**SCBD No. 6026.**

Supreme Court of Oklahoma.

June 18, 2013.

Gina L. Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, Attorney for Complainant.

Jon Edward Brown, Pro Se.

EDMONDSON, J.

¶ 1 Jon Edward Brown, OBA # 16186, was admitted to the practice of law in Oklahoma on September 29, 1994. On February 23, 2012, he was charged in McCurtain County with possession of marijuana and drug paraphernalia, misdemeanors, and possession of methamphetamine, a felony. *State of Oklahoma v. Jon Ed Brown, CF–2012–85.* The McCurtain County Court Clerk sent certified copies of the probable cause arrest affidavit

and information to the Oklahoma Bar Association (OBA) and an investigation was begun.

¶2 The OBA filed a complaint with this Court on May 8, 2012, pursuant to Rule 10, Rules Governing Disciplinary Procedure (RGDP), 5 O.S. 2011, ch. 1, app. 1–A, which asserted that the Respondent was personally incapable of practicing law due to his habitual use of sedatives, drugs and other mentally and physically disabling substances that impaired his ability to conduct efficiently and properly the affairs undertaken for clients in the practice of law. The OBA alleged that the Respondent's possession of a law license in his current mental and physical state posed an immediate threat of substantial and irreparable harm to the members of the public, thereby invoking the interim suspension provisions of Rule 6.2A and Rule 10.2, RGDP.[1]

¶3 The Chief Justice entered an order directing the Respondent to show cause why he should not be immediately suspended for personal incapacity to practice law. He did not respond and an order was entered on June 11, 2012, suspending him from the practice of law. On September 27, 2012, the Chief Justice issued an order directing the OBA to conduct a hearing before a trial panel of the Professional Responsibility Tribunal on the allegations of the Rule 10 complaint. The hearing scheduled for November 9, 2012, was postponed after the OBA filed a motion to continue the hearing until after the Respondent entered a plea to the criminal charges.

¶4 The Respondent pled guilty to the charges on November 9, 2012, pursuant to a plea agreement that consigned him to a five (5) year contract with the McCurtain County Drug Court Program.[2] The Drug Court contract requires him to successfully complete twelve months of intensive monitoring and six months of aftercare, which includes a weekly case management session, individual counseling, two group counseling sessions per week, attendance at AA or NA meetings two times per week, daily check-in and a daily curfew. In addition, the Respondent must submit to random drug testing, attend Drug Court twice monthly, obtain gainful employment, obtain a sponsor, maintain continuous sobriety and have no unexcused absences from the scheduled services. After successful completion of the 18–month program, the Respondent must continue in the program for a total term of five (5) years. If he successfully completes the program, all charges will be dismissed; if he fails to complete the program, he will be immediately sentenced to five (5) years in the custody of the Oklahoma Department of Corrections.

¶5 On November 19, 2012, the OBA provided the Chief Justice with certified copies of the information and pleas of guilty pursu-

---

1. **Rule 6.2A. Emergency interim suspension orders and related relief.**

   **(1) Verified Complaint and Service.**
   The General Counsel, with the concurrence of the chairperson or vice-chairperson of the Professional Responsibility Commission, upon receipt of sufficient evidence demonstrating that a lawyer subject to these Rules has committed conduct in violation of the Oklahoma Rules of Professional Conduct, or is personally incapable of practicing law as set forth in Rule 10 hereof, and where such conduct poses an immediate threat of substantial and irreparable public harm, may file a verified complaint in accordance with Rule 6 hereof requesting interim suspension and other appropriate relief. A copy of the complaint shall be served personally or by certified mail, return receipt requested, upon the respondent by General Counsel ...
   **Rule 10.1. Definition.**
   The term "personally incapable of practicing law" shall include:
   * * *

   (c) Habitual use of alcoholic beverages or liquids of any alcoholic content, hallucinogens, sedatives, drugs, or other mentally or physically disabling substances of any character whatsoever to any extent which impairs or tends to impair ability to conduct efficiently and properly the affairs undertaken for a client in the practice of law.
   **Rule 10.2. Suspension.**
   Whenever it has been determined that a lawyer is personally incapable of practicing law, his license to practice shall be suspended until reinstated by order of this Court.
   **Rule 10.3. Procedure in General.**
   (a) Proceedings to determine whether a lawyer is personally incapable of practicing law shall be instituted and conducted in the same manner and upon the same procedure as disciplinary proceedings, except as otherwise set out in these Rules.

2. He subsequently transferred to the Choctaw County Drug Court Program for supervision and treatment.

ant to Rules 7.1–7.3, RGDP.[3] These sections provide for immediate suspension from the practice of law of a lawyer who has pled guilty to a crime that demonstrates his or her unfitness to practice law. We suspended the Respondent on December 3, 2012, and gave him an opportunity to show cause why the order of interim suspension should be set aside. The Respondent filed an objection, arguing that the conduct to which he pled guilty did not demonstrate his unfitness to practice law. We overruled the objection and ordered the OBA to conduct a hearing before a trial panel of the Professional Responsibility Tribunal. We granted a motion to consolidate the Rule 10 and Rule 7 proceedings, leaving OBAD 1918 as the surviving case number. The hearing before the trial panel was held on March 14, 2013.

¶ 6 The trial panel hears the testimony of witnesses and reviews the evidence before making a recommendation of discipline to this Court. The Court is not bound by their recommendation, but reviews the matter *de novo*. *State ex rel. Oklahoma Bar Ass'n v. Smith*, 2011 OK 8 ¶ 9, 246 P.3d 1090, 1093. To be reinstated, an attorney must make a showing that, over a significant amount of time, he or she has maintained sobriety and refrained from abusing drugs or alcohol; passed random drug tests; attended Alcoholics Anonymous meetings; sought necessary counseling and participated in Lawyers Helping Lawyers; has diligently pursued his or her sobriety and has met the other factors necessary for reinstatement. *State ex rel. Oklahoma Bar Ass'n v. Albert*, 2007 OK 31 ¶ 15, 163 P.3d 527, 534.

¶ 7 The trial panel recommended to this Court that the Respondent be suspended retroactively to June 11, 2012, continuing until thirty days following an order of this Court provisionally reinstating Respondent. They recommended that the Respondent be placed on probation until his plea of guilty in felony Case No. CF–2012–85 is reduced to a misdemeanor or is dismissed. As a condition of probation, they recommend imposing the Probationary Terms and Conditions agreed to by the parties.[4]

### 3. Rule 7.1. Criminal Conviction of Lawyer.

A lawyer who has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal.

**Rule 7.2. Transmittal of Record Relating to Conviction.**

The clerk of any court within this State in which a lawyer is convicted or as to whom proceedings are deferred shall transmit certified copies of the Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and judgment and sentence of conviction to the Chief Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar Association within five (5) days after said conviction. The documents may also be furnished to the Chief Justice by the General Counsel. Such documents, whether from this jurisdiction or any other jurisdiction, shall constitute the charge and be conclusive evidence of the commission of the crime upon which the judgment and sentence is based and shall suffice as the basis for discipline in accordance with these rules.

**Rule 7.3. Interim Suspension from Practice.**

Upon receipt of the certified copies of Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and the judgment and sentence, the Supreme Court shall by order immediately suspend the lawyer from the practice of law until further order of the Court. In its order of suspension the Court shall direct the lawyer to appear at a time certain, to show cause, if any he has, why the order of suspension should be set aside. Upon good cause shown, the Court may set aside its order of suspension when it appears to be in the interest of justice to do so, due regard being had to maintaining the integrity of and confidence in the profession.

4. The probationary terms are:

1. That Respondent shall abide by all conditions and requirements of the McCurtain County Specialty Courts Drug Court program as set forth in the Performance Contract signed by Respondent on November 8, 2012;
2. That Respondent must remain drug free and must submit to drug testing upon request of Drug Court personnel and/or the Office of the General Counsel of the Oklahoma Bar Association;
3. That Respondent will not consume or purchase alcoholic beverages or illegal drugs;
4. That Respondent shall attend all counseling sessions, complete all counseling assignments and participate in all counseling sessions as required by the terms of his Drug Court contract;
5. That Respondent will attend all Drug Court appearances and be on time;
6. That Respondent will attend AA/NA meetings as required by the terms of his Drug Court contract;

¶ 8 The Respondent testified that he attended law school at the University of Michigan and went to work for the Crowe & Dunlevy law firm in Tulsa after graduation. Later he moved to Idabel, Oklahoma, and began working for LeForce & McCombs. In 2008, he and Kevin Sain set up their own law office in Idabel. They practiced together until 2010. The Respondent testified that his problems began in February 2010 when his brother-in-law committed suicide on the back patio of the family home, using the shotgun Respondent had bought his son for a birthday present. The Respondent and his wife suffered a tremendous amount of guilt and their marriage suffered. The Respondent testified that he became depressed and disillusioned. He had been prescribed hydrocodone for back pain resulting from a football injury in high school. He took it periodically for pain without any trouble. After the suicide of his brother-in-law, he began taking it more and more frequently and he became addicted to it. He then began using methamphetamine to counteract the effects of the hydrocodone.

¶ 9 An intervention by fellow lawyers was made on March 24, 2012, and the Respondent agreed to undergo detoxification at the Henryetta Medical Center. Following that, the lawyers arranged for his admission to Rob's Ranch, an inpatient rehabilitation facility in Purcell, Oklahoma, for ninety (90) days. The Respondent was asked to leave after twenty-four (24) days for failure to comply with the rules, specifically by using Valium and methamphetamine and giving Valium to another patient. He testified that he ultimately got sober on his own because he realized that his life would be ruined if he did not. He also stated that he wanted to enter the Drug Court program and that he could not afford long-term inpatient rehabilitation. The Respondent dates his sobriety from August 6, 2012, the last time he used any prescription drug or illegal drug of any kind.

¶ 10 The Respondent admits that at the time of his suspension on June 11, 2012, he was personally incapable of practicing law due to his drug use. He accepted the suspension imposed by this Court, along with the burden of proving by clear and convincing evidence that he is no longer incapacitated. The Respondent filed an application for reinstatement with this Court on January 24, 2013, asserting that the conditions resulting in his incapacity to practice law no longer exist.

¶ 11 In determining the discipline to be imposed or whether a suspension under Rule 10 should be lifted in a particular case, we look to similar cases. The present matter is similar to *State ex rel. Okla. Bar Ass'n v. Albert,* 2007 OK 31, 163 P.3d 527. There, the attorney began drinking heavily and abusing cocaine, actions that he blamed on marital problems and the death of his father. He began to avoid clients and neglect his cases, which resulted in eleven grievances being filed against him by his clients. An in-court intervention occurred on March 9, 2006, and Albert entered a treatment center. On March 24, 2006, the OBA filed a Rule 6 complaint against Albert that contained an application for order of interim suspension for personal incapacity to practice law. Albert agreed to the interim suspension until he could demonstrate his fitness to resume the practice of law. On April 24, 2006, an order of interim suspension was entered.

¶ 12 Albert was discharged from treatment on April 3, 2006. The trial panel held a

7. That Respondent shall report his attendance at counseling sessions, AA/NA meetings and results of drug testing to the Office of the General Counsel of the Oklahoma Bar Association, and provide documentation thereof, by the last day of every month.
8. That Respondent shall not violate the Oklahoma Rules of Professional Conduct or the Rules Governing Disciplinary Proceedings;
9. That Respondent shall not violate the law in any state and will immediately report any such violation in writing to the Office of the General Counsel of the Oklahoma Bar Association within forty-eight (48) hours;

10. That Respondent shall continue to submit to random drug testing at the request of the Office of the General Counsel (via urinalysis or hair follicle testing) during the probationary period at his own cost and that results will be sent directly from the laboratory testing facility to the Oklahoma Bar Association;
11. That Respondent shall abide by and comply with any additional probationary terms and conditions order by the Oklahoma Supreme Court;
12. That Respondent will sign the necessary releases and documentation necessary to facilitate the release of documentary evidence of the above to the Office of the General Counsel.

closed evidentiary hearing on May 23, 2006, at which they heard testimony of witnesses and received joint exhibits and stipulations. On July 7, 2006, Albert and the OBA moved to supplement the record to file a "petition for rehearing" which was actually a petition for reinstatement. The trial panel determined that the record was sufficient to consider reinstatement in addition to imposing discipline. The report filed on August 4, 2006, recommended that Albert be reinstated from the interim suspension and that he be suspended one year for misconduct, with supervision or probation for three (3) years, coupled with stipulations. We remanded to the trial panel for another hearing because Albert failed to meet the necessary burden of proof for reinstatement.

¶ 13 A second hearing was held January 23, 2007. The report to this Court on March 9, 2007, recommended reinstatement, supervision or probation with stipulations for three years, and discipline and costs to be imposed. Upon *de novo* review we found that clear and convincing evidence showed that Albert was no longer under an incapacity that would preclude him from practicing law and that his conduct would conform to the high standards required of a member of the bar. For Albert's admitted misconduct regarding his clients and for direct contempt of court, we imposed discipline of retroactive suspension from the practice of law from the date Albert self-suspended, March 9, 2006, until the date of the opinion. We noted Albert was not convicted of any crimes, but had admitted to criminal conduct that could have resulted in a conviction if the matter had been pursued.

¶ 14 In the present matter, no complaint was filed against the Respondent pursuant to Rule 6, RGDP, for neglect of client matters. Testimony by the OBA's investigator, Tanner Condley, reflected that the Respondent had been the subject of four grievances, but that all were handled administratively and no formal complaints were filed. After his arrest, the Respondent returned files and fees to clients who asked for them. Several members of the McCurtain County bar and attorneys in surrounding communities divided the Respondent's caseload and continued to represent the clients. The Respondent gave a Power of Attorney to Kevin Sain, who in-

sured that all active files were taken care of. Where money had been deposited with the Respondent, it was returned or transferred as directed by the client. There was no evidence that clients were harmed as a result of the Respondent's incapacity.

¶ 15 The Respondent has no prior criminal convictions or charges against him. He has not previously been the subject of bar discipline by any court in which he was licensed to practice law. He has continued to pay his bar dues and is current with all of his continuing legal education requirements. He has moved to Hugo where he has worked in a clerical/research position for the Law Office of Tom Hadley since mid-August, 2012. He has been asked to join Mr. Hadley's law firm as an attorney if reinstated. Mr. Hadley testified that he is satisfied with the quality of the work performed, that he has seen no signs of ongoing substance abuse and that he has no reason to believe that the Respondent is incapable of practicing law.

¶ 16 The Respondent has been cooperative and has at all times admitted his addiction to prescription painkillers along with the use of other illegal drugs both before and after his arrest in 2012. At the time of the hearing, the Respondent had been drug free and sober for more than four and one half months. He produced evidence of multiple random urinalysis tests from the Drug Court program, all of which were negative. The OBA's investigator testified that he did not find any evidence that the Respondent is using drugs or alcohol. The Respondent's Drug Court counselor testified that he has an exemplary record in the program and has exceeded the required standards in almost every respect.

¶ 17 Judge Michael DeBerry from McCurtain County testified that the Respondent is well qualified and ready to resume the practice of law. Kevin Sain, the Respondent's former law partner, testified that the Respondent is currently meeting the Drug Court requirements and he believes without qualification that the Respondent should be permitted to resume the practice of law. Doug Sanders, an attorney in Poteau, testified that the Respondent was a superior lawyer who had been active in the Oklahoma Bar Association and had served on the Board of Governors. Mr. Sanders believes that it is

significant that the Respondent and his wife are both involved in and committed to his recovery, which was not the case before. There is no evidence that the Respondent engaged in the practice of law during his suspension.

¶ 18 The Respondent's evidence reflects that his incompetence to practice law was the result of his abuse of hydrocodone and methamphetamine. He seeks reinstatement because he is clean and has had maintained sobriety, so that the impediments are removed and he is no longer incapable of practicing law. The OBA investigator testified that he believed the reasons for suspension under Rule 10 no longer exist. The General Counsel for the OBA agreed that there is no evidence to suggest that the Respondent currently lacks the capacity to practice law. The report of the trial panel was unanimous in recommending that the Rule 10 suspension be lifted because the Respondent does not now suffer from mental incapacity to practice law.

¶ 19 The Respondent admits that his actions brought discredit upon the Oklahoma Bar Association and he expressed shame and remorse for his actions. The Respondent was the city judge for Idabel, Oklahoma. Headlines in the local newspapers referred to "City Judge Charged with Drug Allegations" and "City Judge Resigns at Removal Hearing." His "mug shot" appeared on the front page of local newspapers. He agrees with the discipline recommended by the trial panel.

¶ 20 The matter stands before us for imposition of final discipline under Rule 7, RGDP, and for a determination whether the Respondent suffers from personal incapacity to practice law at this time. We have reviewed the evidence *de novo* and we find that the Respondent has met his burden of proof of showing that he no longer suffers from personal incapacity to practice law. Accordingly, the suspension imposed under Rule 10 is lifted.

¶ 21 In cases involving a conviction for possession of narcotics with no client harm alleged, we have imposed discipline from suspension to public censure.[5] The Respondent has been under suspension for approximately one year. The Respondent cooperated in getting his clients the help they needed and he was cooperative with the OBA during the investigation and hearing. His participation in the Drug Court Program has been exemplary.

¶ 22 A condition of the Respondent's deferred sentence is that he successfully complete the five (5) year Drug Court program. The Respondent being currently under interim suspension under Rule 7.3, he is hereby suspended from the practice of law for a period commencing June 11, 2012, and ending on the date of this opinion. The Respondent stands publicly censured. An SCBD number shall be assigned for filing the opinion in the office of the Supreme Court Clerk.

¶ 23 The OBA has filed an application to assess costs in the amount of $1,530.20. The Respondent is ordered to pay the costs within ninety (90) days.

RULE 10 SUSPENSION LIFTED; RULE 7 DISCIPLINE BY SUSPENSION AND PUBLIC CENSURE. COSTS IMPOSED.

¶ 24 COLBERT, C.J., REIF, V.C.J., KAUGER, WINCHESTER, EDMONDSON, JJ., —Concur.

¶ 25 WATT, TAYLOR, COMBS, GURICH, JJ., —Dissent.

TAYLOR, J. with whom WATT and GURICH, JJ. join, dissenting.

¶ 1 This Respondent has entered a guilty plea to felony methamphetamine charges. He

5. *State ex rel. Oklahoma Bar Ass'n v. Smith*, 2011 OK 8, 246 P.3d 1090 (public reprimand along with one year deferred suspension with probationary conditions for attorney who self-reported arrest for attempting to obtain a controlled substance with forged prescription); *State ex rel. Oklahoma Bar Ass'n v. Thompson*, 1989 OK 123, 781 P.2d 824 (attorney suspended for nine months for conviction of possession of marijuana); *State ex rel. Oklahoma Bar Ass'n v. Aston*, 2003 OK 101, 81 P.3d 676 (attorney suspended for six months for possession of marijuana); *State ex rel. Oklahoma Bar Ass'n v. Arnett*, 1991 OK 44, 815 P.2d 170 (attorney charged with possession of controlled substance suspended for ninety days); *State ex rel. Oklahoma Bar Ass'n v. Willis*, 1993 OK 138, 863 P.2d 1211 (attorney convicted of obtaining controlled substance by representation warranted suspension for 15 months, commencing on the date of interim suspension).

is on felony probation and under direct criminal court supervision until November 2017. This Court has an overriding obligation to protect the public and to uphold the integrity of the legal profession. A defendant who has entered a plea of guilty in a felony case should not be practicing law. At a very minimum, the Respondent should be suspended from the practice of law during this five-year felony probation. Any request for reinstatement can be considered at an appropriate time in the future.

COMBS, J., with whom WATT and GURICH, JJ., join, dissenting:

¶ 1 I dissent to the majority opinion.

¶ 2 The majority places the Respondent on a retroactive suspension which ends upon the date of the majority opinion.

¶ 3 The Respondent has entered a plea to a felony and his sentencing has been delayed pending his successful completion of the Drug Court program. The Drug Court program must be completed within 42 months. *See* 22 O.S.2011, 471.6 G.[1] I assume although the record does not indicate, the Respondent will be sentenced to a term of imprisonment if he fails to complete the Drug Court requirements, as reflected in his Drug Court plea agreement.[2] I also assume if he successfully completes the Drug Court requirements his case will be dismissed pursuant to the Drug Court plea agreement.[3] We have previously stated that substance abuse is incompatible with the practice of law. *State ex rel. Oklahoma Bar Association v. Giger*, 2001 OK 96, ¶ 21, 37 P.3d 856, 864. The effect of the majority opinion will allow the Respondent to practice law in the State of Oklahoma while he is subject to the strict requirements of his delayed sentencing pursuant to his Drug Court plea. Respondent has entered a plea of guilty to a felony and should not be allowed to practice law while his sentencing status remains in doubt. In

short, being on felony probation is incompatible with the practice of law.

¶ 4 I would suspend the Respondent for two years and a day. Should Respondent be successful in his Drug Court program and then desire to seek readmission, he may pursue that course of action under Rule 11.

---

1. The parties refer to a "5 year Drug Court contract;" I am not familiar with the statutory provisions authorizing such a contract. *See* 22 O.S., 471.1 et. seq.

2. Title 22 O.S.2011, 471.7(E) provides in part:

   At the revocation hearing, if the offender is found to have violated the conditions of the plea agreement or performance contract and disciplinary sanctions have been insufficient to gain compli-

ance, the offender shall be revoked from the program and sentenced for the offense as provided in the plea agreement.

3. Title 22 O.S.2011, 471.9(A)(1) provides:

   When an offender has successfully completed the drug court program, the criminal case against the offender shall be:
   1. Dismissed if the offense was a first felony offense;